UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JAMAL DAMON HENDRIX,<br><br>                       Plaintiff,<br>    v.<br><br>STATE OF NEVADA, et al.,<br><br>                      Defendants. | Case No. 2:15-cv-00560-MMD-NJK<br><br>ORDER |

**I.     SUMMARY**

Currently pending before the Court are two motions: Plaintiff's motion to substitute parties ("Motion to Substitute") and Plaintiff's motion for temporary restraining order ("TRO Motion") (collectively, "Motions"). (ECF Nos. 26, 37.) Defendants filed separate responses to Plaintiff's Motions (ECF Nos. 32, 41). Plaintiff did not file a reply. For the reasons discussed below, the Court denies Plaintiff's Motions.

**II.    BACKGROUND**

Plaintiff is an inmate currently housed at Ely State Prison ("ESP"). Proceeding *pro se*, Plaintiff initially filed an *in forma pauperis* application on March 26, 2015. On October 30, 2015, the Court issued a Screening Order allowing Plaintiff to proceed on eight claims arising from an incident in November 2013 at High Desert State Prison ("HDSP"). These included: (1) a First Amendment retaliation claim against Defendants Gibson, Leavitt, Kulolia, Filson, Anderson, Dunn, Joseph, Scott, Nelson, Neven, and Daniels; (2) an Eighth Amendment excessive force claim against Defendants Dawson, Nelson, Anderson, Trailer, Jones, Scott, Stroud, Neven, Filson, Williams, and Dreesen; (3) an

Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Maryeswar, Adams, Murphy, and Aranas; (4) a due process claim against Defendants Anderson, Dunn, Joseph, and Scott; (5) an Eighth Amendment excessive force claim against Defendants Emiling, Daniels, Nash, Neven, and Williams; (6) a due process claim against Defendants Emiling, Daniels, Nash, Neven, and Williams; (7) a First Amendment retaliation claim against Defendants Potter, Neven, Foster, Daniels, and Filson; and (8) a due process claim against Defendants Potter, Neven, Foster, Daniels, and Filson. (ECF No. 8 at 8-14.)

### A. Motion to Substitute (ECF No. 26)

On March 25, 2016, Plaintiff filed a motion for joinder, requesting to substitute as a defendant the former Director of NDOC, James Greg Cox, with the current interim Director, E.K. McDaniel. (ECF No. 26.) However, the Court dismissed with prejudice the claim against Defendant Cox because there were no allegations that he knew of the other defendant correctional officers' actions. (ECF No. 8 at 9 (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), for the proposition that a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them" or in other words that there is no respondeat superior liability for 1983 civil rights claims).) Thus, technically, substitution is not proper since Cox is no longer a defendant in this action.

To the extent Plaintiff's Motion to Substitute is a request to amend the complaint to assert claims against McDaniel, Plaintiff's Motion fails to set forth any allegations against McDaniel. The Court agrees with Defendants that because the Court dismissed Cox from the Complaint with prejudice, allowing the substitution of McDaniel would be futile. If Defendant Cox had no personal knowledge as NDOC Director of the actions of the correctional officers against Plaintiff, his successor, who was the Deputy Director of Operations for NDOC at the time of the alleged events, would presumably have no personal knowledge either. Because Plaintiff wishes to sue McDaniel in his current capacity as interim NDOC Director without any allegations that he had personal

2

knowledge of the correctional officers' conduct, he cannot be substituted for Defendant Cox.

Therefore, the Court denies Plaintiff's Motion to Substitute. (ECF No. 26.)

### B.     TRO Motion (ECF No. 37)

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders and requires that a motion for a temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standards applicable to preliminary injunctions. *Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001). Furthermore, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Furthermore, under the Prison Litigation Reform Act ("PLRA"),

3

preliminary injunctive relief must be "narrowly draw," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Additionally, preliminary injunctive relief must seek relief of the "same character as that which may be granted finally[,]" and the court may not enjoin conduct relating to "matter[s] lying wholly outside the issues of the suit." *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945). Although the Ninth Circuit has not directly addressed the issue, other courts of appeals have repeatedly held that a litigant seeking preliminary injunctive relief must show "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir.1994); *Colvin v. Caruso,* 605 F.3d 282, 299–300 (6th Cir.2010); *Little v. Jones,* 607 F.3d 1245, 1251 (10th Cir.2010).

Based on Plaintiff's declaration and the sample order he provides with the TRO Motion, his claims of injury and the relief sought do not appear directly related to the November 2013 events that gave rise to the claims in this case. Plaintiff primarily identifies three harms[1] in his TRO Motion: (1) frustration of his access to the NDOC grievance process; (2) denial of his personal property (specifically his television, headphones, and radio); and (3) denial of access to proper legal materials. It is important to emphasize that the events giving rise to the claims in this case — not in the TRO Motion — allegedly occurred at HDSP. Plaintiff is currently incarcerated at ESP and the events supporting his TRO Motion are allegedly occurring at ESP.

In the sample order Plaintiff provided the Court (ECF No. 37 at 1-2), he requests that the Court enjoin Sheryl L. Foster, Dwight Neven, and Brian E. Williams — HDSP

---

[1]Plaintiff makes other allegations of retaliation, including: HDSP officers filing false disciplinary reports that resulted in Plaintiff being placed in disciplinary segregation at ESP; ESP correctional officers writing up Plaintiff to keep him in disciplinary segregation longer; an ESP Associate Warden ordering the destruction of Plaintiff's legal documents and food trays; and denial of Plaintiff's request to have his disciplinary segregation time at ESP suspended and/or to be returned to the general population. (ECF No. 41 at 4 (citing to ECF No. 37 at 3-6).)

4

1  officials — as well as "their successors in office, agents and employees and all other
2  persons that are acting in concern [sic] and participation with them," to cease all
3  retaliation and "frustration of the Plaintiff's grievance process," return Plaintiff's personal
4  property, and cease denial of proper case law and accompanying Sheppard's. (ECF No.
5  37 at 1.) Plaintiff also requests that the Court order ESP's Head Warden, Renee Baker,
6  and Associate Wardens, William Gittere and Harold Mike Byrne, to "present plaintiff with
7  [his television, headphones and radio] and also cease all their agents and employees
8  from all kinds of any (sic) retaliation on plaintiff for using the prison's grievance process
9  to address issues." (*Id.* at 2.) It appears these requests for relief against ESP officials are
10 predicated upon Plaintiff's assumption that HDSP officials Foster, Neven and Williams
11 are directing ESP officials such as Baker, Gittere and Byrne to retaliate against Plaintiff
12 for this lawsuit. However, Plaintiff does not make specific factual allegations that would
13 allow the Court to consider these non-parties to be acting in concert with some of the
14 defendants identified in this case.

15 Defendants argue that the relief that Plaintiff seeks is outside the scope of the
16 underlying lawsuit. (ECF No. 41 at 6.) The Court agrees with Defendants insofar as
17 Plaintiff fails to allege specific facts that link the conduct of the defendants named in the
18 Complaint to the ESP persons named in the TRO Motion. (*See id.* at 7.) In the
19 Complaint, Plaintiff does not allege retaliation by any ESP employee. (*Id.* at 7.) Yet, in
20 Plaintiff's TRO Motion, he makes vague allegations of "revenge[]" by NDOC prison
21 officers (ECF No. 37 at 8). This is insufficient to connect the events of the underlying
22 lawsuit to the facts supporting the relief requested in the TRO Motion.

23 Similarly, Plaintiff alleges that he is "suffering irreparable harm in the form of
24 denial of adequate case laws and Sheapard's (sic) as this case nears summary
25 judgment and [Plaintiff] remains restricted from access to [ESP's] Law Library due to the
26 fact [he is] in a disciplinary housing unit and doesn't [sic] have physical access to the law
27 library." (ECF No. 37 at 6.) These allegations, however, fail to state whether Plaintiff is
28 not being supplied any case law, whether his requests for case law from the law library

are being disregarded by ESP employees, or whether the case law he receives from the law library does not address the specific legal question he asked. Furthermore, this case is not currently at the summary judgment stage nor was it at the time that Plaintiff filed the TRO Motion in April 2016.[2]

### III.  CONCLUSION

For the foregoing reasons, it is ordered that Plaintiff's motion to substitute parties (ECF No. 26) is denied.

It is further ordered that Plaintiff's motion for a temporary restraining order (ECF No. 37) is denied.

DATED THIS 1st day of November 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[2] The Court is concerned with Plaintiff's general claim of denial of access to proper legal materials, as Plaintiff does have other cases before the Court, one of which is currently at the summary judgment stage. *See Hendrix v. State of Nevada et al*, 3:15-cv-00155-MMD-WGC (Motion for Partial Summary Judgment (ECF No. 33) was filed on October 17, 2016). However, this is the not a claim asserted in this case. To the extent Plaintiff believes he has a claim for denial of access to the courts arising from his custody at ESP, Plaintiff will need to file a separate action to pursue his claim after he has exhausted his administrative remedies.