UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JAMAL DAMON HENDRIX,

Plaintiff,

v.

SHERLY L. FOSTER, *et al.*,

Defendants.

Case No. 2:15-cv-00560-MMD-NJK

ORDER

## I. INTRODUCTION

Pending before the Court is Defendants' Renewed Motion for Summary Judgment Pursuant to the Court's Prior Order ("Motion") (ECF No. 98). Plaintiff filed a response (ECF No. 109), and Defendants filed a reply (ECF No. 111). For the reasons discussed below, the Motion is granted in part and denied in part. Plaintiff's request for a status check (ECF No. 119) is denied as moot.

## II. BACKGROUND

Plaintiff, proceeding *pro se*, is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). (ECF No. 72 at 2.) Plaintiff brings claims against various NDOC employees alleging retaliation, excessive force, deliberate indifference to serious medical needs, and due process violations that occurred while Plaintiff was housed at High Desert State Prison ("HDSP"). The claims arise from events that occurred at HDSP on three separate dates: November 15, November 16, and November 18, 2013. A more thorough overview of the alleged facts in this case can be found in the Court's prior order. (*See* ECF No. 96 at 1-4.)

The Court found that the following claims may proceed in its prior order: the retaliation claim against Dunn in Count I; the excessive force claims against Dawson, Nelson, Scott, Trailer, and Jones in Count I; the deliberate indifference claim against Maryeswar, Adams, Murphy, and Aranas in Count I; the excessive force claim against Emling in Count II; and the procedural due process and retaliation claims against Potter in Count III. (*See* ECF No. 96 at 20.) The Court then permitted Defendants leave to file a renewed motion for summary judgment solely based on qualified immunity as to those particular alleged constitutional violations.[1] (*See id.*) That motion is now before this Court.

## III. RELEVANT LEGAL STANDARDS

### A. Summary Judgment

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence

---

[1] The Office of the Nevada Attorney General does not represent Defendants Dunn, Jones, and Manjeshwar. (*See* ECF No. 98 at 3, n. 1, n. 2, n. 3.) Therefore, Defendants' Motion does not address claims against those individuals. Further, Defendants Tammie Dunn and C Maryeswar were dismissed without prejudice per the Court's prior order dated October 27, 2017. (*See* ECF No. 101.) In addition, the Clerk of Court entered Vincent Jones' default on February 23, 2018. (*See* ECF No. 117.) Thus, in this order, the Court addresses a subset of the defendants against whom the Court previously allowed claims to proceed.

necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**B. Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Generally, courts apply a two-step analysis to

3

determine whether qualified immunity applies to bar certain claims. First, a court decides whether the facts *as alleged by the plaintiff* make out a violation of a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (emphasis added), *holding modified by Pearson v. Callahan*, 555 U.S. 223 (2009). Second, the court decides whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The burden to establish that a right was "clearly established" at the time of the alleged misconduct rests with the plaintiff. *See Green v. Camreta*, 588 F.3d 1011, 1031 (9th Cir. 2009), *vacated on other grounds as noted in Greene v. Camreta*, 661 F.3d 1201 (9th Cir. 2011). If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

## IV. DISCUSSION

### A. Count I – Excessive Force against Defendants Dawson, Nelson, Trainer, and Scott

Defendants argue that qualified immunity applies to Hendrix's allegations that Defendants Dawson, Nelson, Trainer, and Scott used excessive force when escorting Hendrix to disciplinary segregation on November 15, 2013. (*See* ECF No. 98 at 5-7.) Hendrix argues it does not. (*See* ECF No. 109 at 4-5.) The Court agrees with Hendrix.

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it may also be proper to consider factors such as the need for application of force, the relationship between that

4

need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7. Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10.

Construing the facts in the light most favorable to Hendrix, the Court finds that Defendants are not entitled to summary judgment on the basis of qualified immunity as to Hendrix's allegations that Defendants Dawson, Nelson, Trainer, and Scott used excessive force when escorting Hendrix to disciplinary segregation on November 15, 2013. (*See* ECF No. 96 at 9-12 (describing disputed material facts regarding the incident).) Hendrix need not have suffered serious injury with respect to the November 15, 2013 incident to establish an Eighth Amendment violation here. *See Hudson*, 503 U.S. at 4. Further, the Court cannot say as a matter of law that the amount of force used by the officers on November 15, 2013 was *de minimis*. Hendrix alleges it was substantial. (*See* ECF No. 9 at 14-15.) Thus, Defendants may have violated clearly established law on November 15, 2013.[2] Defendants' Motion is therefore denied as to Count I alleging excessive force against Defendants Dawson, Nelson, Trainer, and Scott.

**B. Count I – Deliberate Indifference to Serious Medical Needs against Defendants Adams, Murphy, and Aranas**

Hendrix alleges that Adams, Murphy, and Aranas were deliberately indifferent to Hendrix's serious medical needs by denying his grievances requesting medical attention related to the excessive force incident on November 15, 2013. (*See* ECF No. 9-1 at 11; *see also* ECF No. 109 at 5-7.) Adams, Murphy, and Aranas were not directly involved in

---

[2] In other words, the degree of force used on Hendrix is a question of fact for the jury—only then can the Court determine whether, as a matter of law, qualified immunity applies.

5

Plaintiff's medical care; rather, they were medical supervisors who denied his grievances requesting further medical attention. (*See id.*; *see also* ECF No. 109 at 5.) Defendants argue in relevant part that Adams, Murphy, and Aranas are entitled to qualified immunity with respect to this claim because Plaintiff was provided with medical care, the applicable medical providers determined that Plaintiff did not require further treatment or medication, and Plaintiff undermined his own care by walking out of at least one medical appointment. (*See* ECF No. 98 at 9.) Defendants further argue that Hendrix has not identified clearly established law that holds the denial of medical grievances is unconstitutional where the inmate has received medical care. Moreover, these Defendants reasonably believed their actions to be constitutional with respect to Hendrix's medical condition. (*See id.*) The Court agrees with Defendants.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014). In addition, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Additionally, "[a]

difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Here, Hendrix does not genuinely contest that he received medical treatment for the injuries he allegedly sustained during the initial November 15, 2013 cell move and use of force incident. (*See* ECF No. 109 at 5-7.) Further, Hendrix attached his grievance log regarding his medical treatment as Exhibit B to his response to Defendants' Motion. (*See* ECF No. 109 at 42-52.) This grievance log shows that Hendrix received medical care. The log also tends to show that his argument throughout the administrative appeals process was that he felt the care he received was insufficient. (*See id.*) While Hendrix provides the Court with an affidavit attached to his response to Defendants' Motion, wherein he states that he received no medical care after November 15, 2013 (*see id.* at 54), this statement is unclear as to whether the lack of treatment occurred at HDSP or Ely State Prison ("ESP") and is contradicted by the grievance log, which tends to show Hendrix received some treatment (*id.* at 42-52). Thus, the Court finds that this claim falls into the realm of a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment. *See Franklin*, 662 F.2d at 1344. Hendrix has presented no evidence that the course of treatment chosen here was medically unacceptable or was chosen in conscious disregard of an excessive risk to Hendrix's health, and thus Hendrix cannot meet the applicable standard. *See Sanchez*, 891 F.2d at 242 (affirming district court's grant of summary judgment to defendants where plaintiff had been provided with medical care and could not show more than a difference of opinion).

Accordingly, the Court cannot say as a matter of law that Adams, Murphy, and Aranas violated clearly established law or Hendrix's constitutional rights in denying Hendrix's medical grievances. Further, as Adams, Murphy, and Aranas are prison officials who did not directly provide Hendrix with medical care, Hendrix would have to be able to show that they participated or directed the alleged violations resulting in deficient treatment here. *See Taylor*, 880 F.2d at 1045. Hendrix has presented no evidence to this effect in opposing summary judgment. (*See* ECF No. 109 at 5-7, 42-54.) Therefore, the Court finds that Adams, Murphy, and Aranas are entitled to qualified immunity and grants summary judgment in favor of these Defendants with respect to Hendrix's deliberate indifference to serious medical needs claim against them in Count I.

**C. Count II – Excessive Force against Defendant Emling**

The Court finds that it need not address whether qualified immunity applies to the excessive force claim against Emling because the parties do not actually address whether qualified immunity should apply. (*See* ECF Nos. 98 at 10-11, 109 at 7-8.) Instead, the parties re-litigate the factual question of whether Hendrix properly exhausted his administrative remedies with respect to Hendrix's claim that Emling choked him during the preliminary disciplinary hearing. (*See id.*) While such argument and evidence is inappropriate here (*see* ECF No. 96 at 20), the Court construes this portion of Defendants' motion as one seeking reconsideration of the Court's prior ruling. Considering evidence Hendrix attached to his opposition—specifically, his grievance file[3] regarding this incident in which he does not mention that Emling choked him (*see* ECF No. 109 at 59-108)—the Court finds that reconsideration is appropriate.

---

[3]This grievance file was not previously before the Court when it ruled on Defendants' first motion for summary judgment, to which Hendrix failed to respond. (*See* ECF No. 96 at 1, 6-7.) The Court's earlier decision relied on Hendrix's statement in his verified complaint that he exhausted his remedies with respect to this claim. (S*ee id.* at 16 (relying on ECF No. 9-1 at 19).)

A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003). Reconsideration is appropriate if this Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Here, while the grievance file was available at the time of the prior order, the file contradicts Hendrix's verified complaint and Hendrix's additional affidavits stating that Emling choked him and therefore calls into question whether Hendrix actually exhausted his administrative remedies with respect to this claim. Because exhaustion is a question of law and one that the Court is obligated to resolve before it reaches the merits of Hendrix's claims, *see Albino v. Baca*, 747 F.3d 1162, 1170-71 (9th Cir. 2014), the Court finds it would be manifestly unjust to allow Hendrix's claim that Emling choked him to proceed when it is no longer disputed that he failed to exhaust his administrative remedies. (*See* ECF No. 109 at 59-108.) The Court's prior order (ECF No. 96 at 16) denied Defendants' summary judgment on this claim in part because the parties disputed whether Hendrix had exhausted this claim. Because it is now evident Hendrix did not exhaust this claim, the Court reverses its prior order and grants summary judgment in favor of Defendants with respect to Hendrix's excessive force claim against Emling.

### D. Count III – Retaliation against Defendant Potter

In Count III, Hendrix contends that Potter would not allow him to call witnesses at his disciplinary hearing because an officer had been suspended as a result of Hendrix's testimony to the Inspector General ("IG") regarding an excessive force incident. (*See* ECF No. 9 at 19; ECF No. 9-1 at 15.) Defendants argue that Hendrix has not pointed to clearly established law indicating that it is a violation of an inmate's constitutional rights for a prison official to state that no witnesses will testify at a disciplinary hearing but then offer

him an opportunity to call a witness. (*See* ECF No. 98 at 12.) Defendants further argue there is an insufficient connection between Hendrix's testimony to the IG and Potter to establish that Potter had a retaliatory motive. (*See id.*) The Court agrees that Potter is entitled to qualified immunity with respect to Hendrix's First Amendment retaliation claim, but not for the reasons argued by Defendants here. Instead, the Court finds for Defendants on this point because it is unable to locate caselaw indicating that testifying in an IG investigation constitutes protected conduct—and the parties have not provided any.

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *See id.* at 568-69.

Assuming that Potter indicated that Hendrix would not be allowed to call witnesses at his hearing because Plaintiff had testified to the IG about an excessive force incident, this is not clearly a constitutional violation. The law on first amendment retaliation in the prison context relates to the filing of civil lawsuits and grievances, not testimony in an internal prison investigation. Thus, it is not clear that Hendrix's testimony to the IG

constituted protected conduct. Hendrix has cited no law indicating that this is protected conduct and failed to offer any argument on this point in his response to Defendants' Motion. (*See* ECF No. 109 at 1-15.) The Court therefore finds that qualified immunity applies, and summary judgment is granted on Count III, alleging retaliation, as to Defendant Potter.

### E. Count III – Procedural Due Process against Defendant Potter

In Count III, Hendrix claims his procedural due process rights were violated when Defendant Potter told him he would not be allowed to call a witness before his disciplinary hearing relating to the November 15, 2013 incident. (*See* ECF No. 9-1 at 15.) Hendrix argues he was not given a genuine opportunity to call a witness in violation of his procedural due process rights despite an audio recording of the disciplinary hearing in which Potter asked Hendrix if he wished to call any witnesses and Hendrix responded "no."[4] (*See* ECF No. 9-1 at 15; *see also* ECF No. 72-3.) Assuming Hendrix's allegations to be true, the Court finds that qualified immunity does not apply to this claim.

When a protected liberty interest exists and a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974). An inmate's right to present witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985). Jail officials "must make the decision

---

[4]Potter also filled out a form where he states that Hendrix elected not to call any witnesses. (*See* ECF No. 72-2 at 7.)

11

whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003). Despite this, an inmate has no right to cross-examine or confront witnesses in prison disciplinary hearings. *See Wolff*, 418 U.S. at 567-68.

Here, a material factual dispute exists between the parties as to whether Hendrix was given a genuine opportunity to call a witness. Proper resolution of that dispute depends on whether Potter informed Hendrix before the hearing and before the audio recording was activated that he had already found Hendrix guilty and that there would be no witnesses called. (ECF No. 9-1 at 15.) It also depends on the related question of whether a reasonable person would interpret Potter's statement to mean that Hendrix would not be allowed to call a witness. Moreover, Hendrix had the right to call witnesses at his disciplinary hearing unless Potter had a legitimate penological reason for prohibiting him from calling them. *See Wolff*, 418 U.S. at 566. Defendants have not presented any evidence of the legitimate penological reasons that may have informed Potter's decision not to allow Hendrix to call a witness.

Regardless, the qualified immunity analysis requires that this Court accept as true Hendrix's version of the facts. Assuming Potter indicated to Hendrix that he could not call a witness in his own defense, this deprived Hendrix of an established due process right. A reasonable officer in Potter's position would have known this.[5] Accordingly, the Court denies summary judgment as to Count III against Defendant Potter alleging a violation of Hendrix's procedural due process rights.

V. **CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

---

[5]This is buttressed by the fact that in the audio recording Potter asked Hendrix if he would like to call a witness.

12

determines that they do not warrant discussion as they do not affect the outcome of Defendants' Motion.

It is therefore ordered that Defendants' Motion for Summary Judgment (ECF No. 98) is granted in part and denied in part. It is granted with respect to: (1) the deliberate indifference claims in Count I; (2) the excessive force claim against Defendant Emling in Count II; and (3) the First Amendment retaliation claim against Defendant Potter in Count III. It is denied in all other respects. Thus, Hendrix's case may proceed only with respect to: (1) Hendrix's allegations that Defendants Dawson, Nelson, Trainer, and Scott used excessive force when escorting Hendrix to disciplinary segregation on November 15, 2013 (Count I); and (2) Hendrix's procedural due process claim that Potter prevented him from calling a witness at the November 18, 2013 disciplinary hearing (Count III).

It is further ordered that Plaintiff's request of status in civil action (ECF No. 119) is denied as moot.

DATED THIS 18th day of September 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE